```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 11-2699(DSD/JJG)
```

Diantha Gary,

       Plaintiff,

v.                                                          **ORDER**

Officer Anna Christopherson,
and Officer Jason Kiritschenko,
in their individual and official
capacities, and City of Minneapolis,

       Defendants.

    Zorislav R. Leyderman, Esq. and The Law Office of Zorislav R. Leyderman, 222 South Ninth Street, Suite 1600, Minneapolis, MN 55402, counsel for plaintiff.

    Timothy S. Skarda, Esq., Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, MN 55415, counsel for defendants.

This matter is before the court upon the motion for summary judgment by defendants Anna Christopherson,[1] Jason Kiritschenko and the City of Minneapolis. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion in part.

---

[1] Christopherson has since changed her name to Anna Hansen. To remain consistent with the docket, the court refers to her as Anna Christopherson.

**BACKGROUND**

This excessive-force dispute arises out of an August 21, 2010, incident between plaintiff Diantha Gary and Minneapolis police officers Christopherson and Kiritschenko. Early that morning, Gary called 911 to report a stabbing in her apartment building. Gary Dep. 23:22-24:4. Several Minneapolis police officers, including Christopherson and Kiritschenko, responded to the apartment building. Id. at 5:14.

When the officers arrived, Gary, a retired nurse, was attending to the stabbing victim in an interior hallway. Id. at 25:23-26:6. Paramedics arrived shortly thereafter and transported the victim to the hospital. Id. at 26:10-13. Gary remained in the hallway, and Christopherson states that she began disrupting the investigation by (1) yelling that the officers could not enter the victim's apartment and (2) interfering with the crime scene. Christopherson Dep. 20:11-15, 28:6-8. In response, the officers asked Gary to return to her apartment. Gary Dep. 27:14-16.

Gary alleges that when she did not immediately comply, Kiritschenko "punched" her in the chest two times with his fingers. Id. at 11:9-10, 13:13-17.[2] Gary's son, Jerry Gary, was also in the

---

[2] Kiritschenko was not deposed, as he is on active military duty in Afghanistan. See Defs.' Mem. Supp. 1 n.1. As a result, it is unclear from the record whether Kiritschenko was the male officer who allegedly struck Gary. See Skarda Aff. Ex. C, at 12 (noting that Sergeant David Schmidt reported "extend[ing] [his] left arm and with an open hand gently push[ing] [Gary] back down
(continued...)

hallway, and observed the physical contact. Id. at 27:10-12. Jerry Gary protested and was arrested for obstructing legal process after he refused to leave the hallway and struck Christopherson. Id.; Christopherson Dep. 44:2-11; Skarda Aff. Ex. E.

After Jerry Gary was arrested, Diantha Gary again approached the officers. Gary asserts that she was trying to offer her account of the stabbing. Gary Dep. 29:12-20. Christopherson responds that Gary was being loud, aggressive and reiterating that the officers could not enter the victim's apartment. Christopherson Dep. 28:16-29:16. The officers instructed Gary to return to her apartment several times. Id. at 29:21-23. In response, Gary again called 911 and requested that additional officers be sent to the apartment.[3] Id. at 30:21-22; Gary Dep. 31:8-18.

Gary alleges that, after she was disconnected from 911, Christopherson grabbed and squeezed her upper arm and pushed her against the hallway wall. Gary Dep. 11:11-12, 18:7-11. Christopherson allegedly maintained this restraint for five to six

---

[2](...continued)
the hallway away from the other Officers").

[3] The 911 call was recorded, and the officers can be heard in the background repeatedly telling Gary to "go back in [her] apartment." Skarda Aff. Ex. G. Gary can be heard to say, "Don't push me." The police officers at the scene instructed the dispatcher that additional officers were not necessary. Gary Dep. 31:15-18. Gary alleges that this call was placed after Kiritschenko "punched" her and before Christopherson held her against the wall. Id. at 31:21, 32:13-18.

minutes. Id. at 19:20-21. Gary further alleges that she repeatedly asked to be released and offered to return to her apartment but that Christopherson refused and squeezed her arm to the point of numbness. Id. at 11:12-24, 19:4-6. Conversely, Christopherson contends that she placed Gary in a gentle "escort hold" - with one hand on her elbow and one on her wrist - for the fifteen seconds it took to lead Gary from the crime scene to her apartment. Christopherson Dep. 36:11-22, 40:1-6. After Christopherson released her grip, Gary entered her apartment without incident. Gary Dep. 12:1-5.

Later that morning, Gary went to the emergency room at Abbott Northwestern Hospital. Id. at 12:7. Gary reported pain and exhibited tenderness in her sternum and right arm. Id. at 13:18-20; Leyderman Aff. Ex. 4, at 3. Gary also exhibited "degenerative changes" in her right humerus and elbow. Skarda Aff. Ex. F, at 3. Doctors provided a sling for Gary's arm and a prescription for acetaminophen-codeine. Leyderman Aff. Ex. 4, at 10.

Months later, on February 24, 2011, Gary visited her primary care physician with complaints of right-arm pain. Id. Ex. 5, at 1. Her physician recommended physical therapy, which Gary began on March 10, 2011. Id. Ex. 6, at 1. Gary reported to her physical therapist that she struggles with personal care and getting dressed, is unable to lie on her right side and struggles to extend her arms. Id. Gary attended thirteen physical therapy sessions.

Id. at 1-51. Gary reports that she still has anxiety, difficulty sleeping, soreness and loss of strength and mobility in her right arm. Gary Dep. 17:7, 20:17-24.

On August 25, 2011, Gary filed this action in Minnesota court, alleging unreasonable seizure and excessive force under 42 U.S.C. § 1983, assault, battery and both negligent and intentional infliction of emotional distress.[4] Defendants timely removed, and now move for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

---

[4] At oral argument, Gary waived her claims for negligent and intentional infliction of emotional distress and her claim against the City of Minneapolis under Monell v. Department of Social Services, 436 U.S. 658 (1978). Therefore, summary judgment on these claims is warranted.

5

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II.  Excessive Force

Defendants claim that Gary's excessive force claim is barred by qualified immunity. "The doctrine of qualified immunity protects [law enforcement] officers from personal liability under § 1983 insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (alteration in original) (citation and internal quotation marks omitted). The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those

6

who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether defendants are entitled to qualified immunity, the court views the facts in the light most favorable to Gary and considers (1) whether the alleged facts demonstrate that the conduct of defendants violated a constitutional right and (2) whether the right claimed was clearly established at the time of the alleged injury. See Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). "If the answer to either question is no," then defendants are entitled to qualified immunity. Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010); see Pearson v. Callahan, 555 U.S. 223 (2009).

**A.   Constitutional Violation**

Section 1983 of Title 42 of the United States Code is "not itself a source of substantive rights." Albright v. Oliver, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted). As a result, a plaintiff must "identify the specific constitutional right allegedly infringed." See id. (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). Here, Gary claims that defendants violated her Fourth Amendment right to be free from unreasonable seizure.[5]

---

[5] "A seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force
(continued...)

The Fourth Amendment right to be free from unreasonable seizure protects against the use of excessive force in the apprehension or detention of a person. See Graham, 490 U.S. at 395. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citations and internal quotation marks omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97; see Brown, 574 F.3d at 496. In short, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."

---

[5](...continued)
or show of authority, ... in some way restrained the liberty of a citizen." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (alteration in original) (citations and internal quotation marks omitted). Construing the facts in the light most favorable to Gary, a seizure occurred when Christopherson physically restrained Gary for five to six minutes.

Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396). When evaluating the reasonableness of an officer's use of force, the court considers the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citation omitted).

The officers argue that their use of force was reasonable. Specifically, the officers state that the situation was tense, that Jerry Gary had already been arrested, and that Diantha Gary was being uncooperative and disruptive to the investigation. Indeed, Christopherson stated that she considered arresting Gary for obstructing legal process. Christopherson Dep. 60:11-61:5. Even if Gary had obstructed legal process, however, such a crime is relatively minor. See Minn. Stat. § 609.50, subdiv. 2 (noting that penalty for obstruction of legal process, in absence of aggravating factors, is limited to imprisonment for not more than 90 days). Moreover, there is no evidence that Gary was physically combative, threatened the officers' safety or was a flight risk. As a result, crediting Gary's version of the events, a reasonable jury could find that the officers' conduct - punching her in the chest, restraining her against the wall and squeezing her arm for five to six minutes - was not objectively reasonable and constituted a

Fourth Amendment violation. See Bauer v. Norris, 713 F.2d 408, 412-13 (8th Cir. 1983) (upholding excessive force jury verdict when "there [was] evidence in the record that the [plaintiffs] ... were argumentative, vituperative, and threatened legal action ... [but] virtually no evidence that either of the [plaintiffs] actually *physically* resisted or *physically* threatened [the officers] at the time of the arrests"). Therefore, material facts are in dispute as to whether the officers violated Gary's constitutional rights.

### B. Clearly-Established Constitutional Right

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (citation omitted). In other words, in light of pre-existing law, the unlawfulness of the officers' action must be apparent. See Shannon v. Koehler, 616 F.3d 855, 864 (8th Cir. 2010).

"The right to be free from excessive force ... is clearly established under the Fourth Amendment." Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (citation omitted); see Bauer, 713 F.2d at 412 ("[T]he use of any force by officers simply because a suspect is argumentative, contentious, or vituperative is not to be condoned." (alteration in original) (citations and internal quotation marks omitted)). Defendants argue, however, that at the time of the incident, it "was not clearly established ... that an officer violated the rights of [a detainee] by applying force that

10

caused only de minimis injury." Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2011). Given the state of the law at the time, "a reasonable officer could have believed that as long as he did not cause more than de minimis injury to [a detainee], his actions would not run afoul of the Fourth Amendment." Id.

Here, Gary has presented evidence that she suffered an arm injury that forced her to use a sling, diminished her strength and mobility and required a period of physical therapy. As a result, a material fact dispute exists as to the severity of Gary's injuries, and the court cannot conclude that the officers caused only de minimis injury. See Small, 708 F.3d at 1005 (explaining that laceration treated at hospital without the need for stitches was more than de minimis injury); Copeland v. Locke, 613 F.3d 875, 881-82 (8th Cir. 2010) (finding chronic knee injury constitutes more than de minimis injury).[6] Therefore, the officers are not entitled to qualified immunity, and summary judgment is not warranted as to Gary's excessive force claim.[7]

---

[6] Defendants argue that Gary's injuries are symptoms of a prior diagnosis of carpal tunnel syndrome. Such an argument, however, does not resolve the material fact dispute. See Copeland v. Locke, 613 F.3d 875, 882 (8th Cir. 2010) ("Although the appellees presented expert testimony tending to show that [plaintiff]'s injuries were a direct result of his pre-existing condition, such testimony is for the jury to weigh, and not the judge on summary judgment.").

[7] An officer may be liable for failing to intervene when another officer uses excessive force. Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981). "To establish such a claim ... a
(continued...)

## III. Intentional Torts

Defendants next argue that Gary's state-law claims for assault and battery are barred by the officers' official immunity. "The official immunity doctrine provides that a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." Elwood v. Rice Cnty., 423 N.W.2d 671, 679 (Minn. 1988) (citations and internal quotation marks omitted). In this context, malicious and willful are synonyms meaning "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991) (citations and internal quotation marks omitted). Official immunity applies when the official demonstrates either "(1) that the conduct was 'objectively' legally reasonable, that is, legally justified under the circumstances; (2) that the conduct was 'subjectively' reasonable, that is, taken with subjective good faith; or (3) that the right allegedly violated was not clearly established ...." Gleason v. Metro. Council Transit

---

⁷(...continued)
plaintiff must show, inter alia, that the officer observed or had reason to know that excessive force would be or was being used." Hicks v. Norwood, 640 F.3d 839, 843 (8th Cir. 2011) (citation and internal quotation marks omitted). Gary states that Kiritschenko observed Christopherson restraining Gary. Gary Dep. 32:22-33:15. As a result, even if Kiritschenko's force caused only de minimis injury, he may be liable for failing to intervene while Christopherson was restraining Gary.

Operations, 563 N.W.2d 309, 318 (Minn. Ct. App. 1997).

Gary alleges that defendants committed assault and battery when (1) Christopherson restrained her against the wall and squeezed her arm for five to six minutes and (2) Kiritschenko "punched" her twice in the chest. The court separately examines the claims of official immunity as to each officer.

### A. Christopherson

Here, Christopherson is not entitled to qualified immunity on the § 1983 claim, and although that determination is "not conclusive, [it is] instructive when ... examin[ing] an official immunity issue." Rico, 472 N.W.2d at 108. As already explained, Christopherson cannot demonstrate as a matter of law that her conduct was objectively legally reasonable or that she caused only de minimis injury. Further, a material fact issue remains as to Christopherson's state of mind, and a reasonable jury, crediting Gary's version of the facts, could infer malice and a willful violation of Gary's rights. In sum, Christopherson has not demonstrated that official immunity attaches, and summary judgment on the assault and battery claims is not warranted as to Christopherson.[8]

---

[8] Because fact issues preclude a finding that Christopherson had official immunity, the City of Minneapolis may be liable for assault and battery under respondeat superior. See Ward v. Olson, No. 11-2314, 2013 WL 1408633, at *6 n.9 (D. Minn. Apr. 8, 2013) (noting that municipalities are generally liable for employees' torts unless official immunity attaches). Therefore, summary
(continued...)


### B. Kiritschenko

Official immunity will attach "when the official demonstrates ... that there was no basis for knowing the conduct would violate the plaintiff's rights." Gleason, 563 N.W.2d at 318. Kiritschenko argues that he did not cause more than de minimis injury. Specifically, only the bruising and midsternal chest pain are potentially attributable to Kiritschenko. See Skarda Aff. Ex. F, at 1; Gary Dep. 13:18-23. Such injuries are de minimis as a matter of law. See Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) (finding "relatively minor scrapes and bruises ... were *de minimis* injuries"). As a result, Kiritschenko is entitled to official immunity, as it was not clearly established at the time of the incident that causing de minimis injuries constituted excessive force. See McClennon v. Kipke, 821 F. Supp. 2d 1101, 1111 (D. Minn. 2011) (applying official immunity when police officer caused de minimis injuries). Therefore, summary judgment on the assault and battery claims is warranted as to Kiritschenko.

---

[8](...continued)
judgment for the City of Minneapolis on the assault and battery claims is not warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [ECF No. 14] is granted in part, consistent with this order.


Dated:  May 28, 2013

<div style="text-align: right;">

s/David S. Doty  
David S. Doty, Judge  
United States District Court

</div>